■ In the Matter of HARMON FUNERAL HOME, INC., Appellant. PHILIP Ross, as Industrial Commissioner, Respondent.—Decision affirmed, without costs. No opinion. Sweeney, J. P., Kane, Staley, Jr., and Main, JJ., concur.

Mikoll, J., dissents and votes to reverse in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. The decision of the board flies in the face of the realities of this situation. There is not substantial evidence in the record to conclude that pallbearers engaged by appellant, Harmon Funeral Home, Inc., to render services as pallbearers to the family of a deceased person are employees of the appellant. In order to conclude that an employer-employee relationship exists the various indicia of such a relationship should be weighed in balance. The board affirmed the referee's decision with no additional findings of fact except that it concluded that the employer made *some* profit in its dealings with pallbearers. In his decision, the referee stated that the union agreement was a significant factor in spelling

out the employer-employee relationship. He also said that credible evidence established that there was sufficient direction and control over pallbearers by the funeral home to establish an employer-employee relationship. The record does not support the finding that appellant exercised control and direction over the pallbearers. The sole witness in the proceeding was John Harmon. His testimony indicated that the appellant's business consists of making provisions for burial services and interment for the family of the deceased. As an accommodation, appellant on occasion arranges for the services of pallbearers from Hall's Livery Service, the company which also supplies appellant with a hearse and limousine for funerals. It is the family of the deceased which decides whether it wishes to engage the services of pallbearers or supply their own. The livery company maintains a pallbearers' list from which list the livery company selects the persons who will so serve. This function is second front work for the pallbearers. It is the livery company which not only chooses the pallbearers but tells them where to go and when to appear. Appellant does not know their identities before they appear at the appointed hour. The pallbearers are not instructed in their duties by the appellant. Their style of dress is not discussed with them but they usually appear in morning coats and striped trousers supplied by them. Pallbearers use their own cars to get to the funeral home, from there to the church, then to the cemetery and, finally, back home. They work for other funeral homes. No penalty is imposed if they decline to work. Appellant makes no deductions from their pay and they receive none of the benefits paid to appellant's usual employees. Appellant charges the families who request pallbearers' services for payments for the cost of their work and adds enough to cover workers' compensation payment. If the pallbearers are required to do extra work of carrying, the appellant bears the expense. Appellant gives the reimbursement for their services to the livery company's regular employee who is the hearse driver. It is he who then pays the pallbearers. Appellant testified that he makes either no profit or a miniscule one for arranging for pallbearers. Appellant is a member of the Metropolitan Funeral Directors' Association, an association which bargained for and negotiated an agreement for him and other funeral parlors with Local No. 1034, International Brotherhood of Teamsters. The first such agreement was signed in 1972. Pursuant to it, funeral parlors were designated as employers and pallbearers as employees. The agreement sets the rates for service. Mr. Harmon testified that the agreement was entered into by appellant and other funeral homes in order to have access to metropolitan area cemeteries and to obtain hearse and limousine services. Appellant has operated as a funeral home for 30 years without being required to pay unemployment insurance contributions. A definition of the employment concept which is generally accepted in the law is given in section 220 of the Restatement of Agency 2d: "A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." The relationship of the pallbearers to appellant in terms of this definition does not conform with that of employer-employee. There is lack of control by appellant; the relationship is an extremely casual one; the work performed is not part of appellant's business but only an accommodation offered when a family does not wish to provide its own pallbearers; the parties to the arrangement do not consider themselves as employer-employees; it is to the livery company that the employees look for engagement to work and for training and direction in the service they supply and, finally, the cost of the service rendered by the pallbearers is borne by the

customers of the appellant and not the appellant. The over-all circumstances in this case clearly indicate that the pallbearers are not Harmon's employees. The language of the agreement relied on by the referee is but one of the many factors to be considered in an examination of the relationship. Standing as it does, unsupported by other indicia, it should not be determinative of the issue. The decision of the board should be reversed.